JUDGE DANIELS

UNITED STATES DISTRICT COURT
NEW YORK SOUTHERN DISTRICT
-------------------------------------------------------------x
PHILIPPE BUHANNIC, PATRICK BUHANNIC,

                                  Petitioners,

                                                    **18 CV 5372**

          -against-
                                                    Index No:

                                                    Judge:

TRADINGSCREEN INC.; PIERRE SCHROEDER;
PIERO GRANDI; FRANK PLACENTI; ROBERT
TRUDEAU; TCV VI, L.P., AND TCV MEMBER
FUND, L.P.

                                  Respondents,
-------------------------------------------------------------x

COMPLAINT

BOOKS AND RECORDSPRODUCTION

JURY DEMANDED

## VERIFIED OTSC MOTION

Plaintiffs Philippe Buhannic and Patrick Buhannic ("Plaintiffs"), Pro se, pleads, upon knowledge as to themselves and upon information and belief as to all other matters, as and for their Verified Complaint for inspection of books and records pursuant to 8 *Del. C.* § 220(d) against defendant TradingScreen Inc. ("TradingScreen" or the "Company") as follows:

My name is Philippe Buhannic, I am a co-plaintiff in this matter. I am a foreign citizen with a French nationality and a swiss resident, and the conflict is about hundreds of Millions of USD of value unduly stolen and therefore the diversity exception clearly put this case into the hands of the Federal Court system ( United States Constitution, in Article III, § 2,  28 U.S.C. § 1332).

## NATURE OF THE ACTION

1.     This is an action under Section 220 of the General Corporation Law of the State of Delaware ("Section 220") to compel TradingScreen to provide to Plaintiffs -- two directors of the Company -- certain books and records that the company is in a malignant attempt, contrary to all expected behavior and obligations, to hide important information from its Board members that are questioning its governance, strategy and management.

2.     On multiple occasions in 2017 and 2018, the Plaintiffs, in their

RLF1 10795499v.1

capacity as directors of TradingScreen, delivered by FedEx and email multiple written demands to the Company's principal place of business. Plaintiffs' demands asserted the right, pursuant to Section 220(d), to inspect and make copies of certain books and records. Plaintiffs seek access to the Company's books and records to properly inform himself, do efficiently their job at each Board meeting and keep current with the exact situation of the company as the information received by the Board of Directors (they have been excluded unduly of all committees despite their majority ownership) and given a few hours in advance is incomplete, doctored, manipulated and inexistent for the Board members that don't agree with the direction of the company, in order to continue to discharge their fiduciary duties as directors of the Company.

3.      Since June 2016, the Company has responded to Plaintiff's Section 220 demands always negatively, not producing a single page of information. The Company refused to produce all of the books and records requested in the Section 220(d) demands. Indeed, the Company took the position that Plaintiffs is currently averse to the Company, not surprisingly as the results are an absolute disaster and clear theft and abuse of corporate assets have taken place, and that we would therefore not be entitled to inspect any of the requested books and records. The Company's position is inconsistent with Delaware law, however, and the Company has failed to comply with Section 220(d).

RLF1 10795499v.1

## THE PARTIES

4.      Plaintiffs are directors of the Company. Plaintiffs are also despite the despicable manipulations of TCV the largest common shareholder by far (70% control) of TradingScreen is a stockholder of the Company and Plaintiffs effectively controlled the majority of the shareholding as demonstrated by documents presented by the Plaintiffs in the last corporate case in Delaware and that Vice Chancellor Laster refused to even read in the last passage front of him, having rendered his decision before the deadlines given by him and before receiving the Plaintiffs documents on the stockholding of the Company in May 2016.  While the current Board majority, installed by Vice Chancellor Laster in May 2016 represents barely 18% of the true shareholding. Plaintiffs' seats on the Company's Board have also been made completely useless in governance as the illegal majority has hijacked the governance process by creating an executive committee that oversee all decisions, making the Board completely useless. These positions at the board of the Plaintiffs exist by virtue of a Stockholders' Agreement between the Company and the Series D Holders. These positions however have been made completely irrelevant by the decision of Vice Chancellor Laster when he decided, purely based on his bias against the Plaintiffs, to fundamentally give the company to TCV and the two corrupt Board members without any legal basis or logic, and steal it form its creator and founder Philippe Buhannic. That Stockholders' Agreement expressly provides that a director nominated by the

4

majority of the common shareholders shall be a member of the Compensation Committee of the Board for instance, which is not respected for instance by the current Board. Nothing in the Stockholders' Agreement between the Company and the Series D Holders does provide for directors from different origin to have a different access to information and that directors nominated by the majority of the common stockholders would be entitled to less information that the Series D Holders. Plaintiffs are therefore being treated unfairly compared to their rights.

5.     Defendant TradingScreen is a corporation duly organized under the laws of the State of Delaware, with its principal place of business located at 1 Penn Plaza, 49th floor, New York, New York 10119. The Company is a global provider of electronic trading solutions that delivers a management platform and a global network to access any market, any counterparty and trade any instrument. TradingScreen was founded by Philippe Buhannic. Mr. Buhannic currently serves only as a Board member since the iniquitous decision of Vice Chancellor Laster despite having created all the products, signed most of the large clients, being a visionary in his business and having created the most profitable Fintech company now almost in a bankruptcy stage since the decision of Vice Chancellor Laster.

## THE DEMAND AND THE COMPANY'S DEFICIENT RESPONSE

6.     On many occasions in 2017 and 2018, Plaintiffs, in their capacity as directors of TradingScreen, delivered multiple demand letters, as shown in the various exhibits, pursuant to Section 220(d) (the "Demand") to TradingScreen's general counsel at the Company's principal place of business, some true and correct copies of the Demands are attached hereto as Exhibit A.

7.     The numerous Demands identified Plaintiffs as directors of TradingScreen and complied in all respects with Section 220(d) as to the form and manner of making a demand for the inspection of books and records.

RLF1 10795499v.1

The Demands identified the following proper purpose for the requested inspection of the books and records:

> The purpose in making this demand is to properly inform ourselves about the real situation of the company and the various information listed in the list of requests that were never provided in order for us to discharge ourselves of our fiduciary duties.

*See* Ex. A at 1.

8.      Consistent with Section 220, the Demand sought production of books and records of the Company in many specific categories, which are directly related to Plaintiffs' proper purpose, as nothing was ever provided, the list which was built over time to be able to participate positively in the few Board meetings, is now obviously longer as at each occasion they were requested, the company refused to produce even a single document. These documents are listed in the last request that was sent today again to the company and is attached to this filing.

9.      Although Plaintiffs had previously requested these materials from the Company, Plaintiffs' requests for information, despite their status as directors, were simply ignored. Therefore, we are requesting them again and this time we are filing a 220 officially in Delaware.

10.      On multiple occasions, TradingScreen delivered letters denying to Plaintiffs their Demands (see exhibits). A true and correct copy of some of the Responses are attached hereto as Exhibits.

11.      The Company did not contend in the various Responses that the

Demand in any way failed to comply with the requirements of Section 220. The Company's Response also did not assert that Plaintiff's purpose in making the Demand was improper, nor did the Response raise any objection to the breadth or specificity of the Demand, which is understandable as the demands were reasonable, very targeted and very quick to produce.

12.    In the various Responses, however, the Company refused to produce all of the requested books and records over a period of now two years based on the actions we have started to get the shareholders protected against the criminal acts of the current management. We can understand why as it would be embarrassing for the company to give us this information as it will show the disastrous effect of Vice Chancellor Laster iniquitous decision, to put incompetent people in charge of a Fintech company, but also would show the stealing of assets and the plundering organized for the greater benefit of the two rogue Board members and TCV since this decision.

13.    The company is then disputing the proper purpose of the request which is laughable as the company has moved from a cash rich situation to a virtual bankruptcy situation from 39 M USD of near cash to 20 M USD in debt in two years thanks to the dramatic mismanagement and plundering of the two rogue Board members and the decision from Vice Chancellor Laster, based on his bias against the Plaintiffs, and not the law. What better purpose or obligations would Board members have than protect the integrity of a company against thieves that

are plundering the company. Furthermore, there is today a total lack of corporate governance as the Board does not even meet any more, replaced by an executive committee constituted only by the members aligned with TCV in total contravention with the most basic principles of governance. The Board has become a simple "ballot stuffing" exercise thanks to the decision of Vice Chancellor Laster that effectively prohibits the majority owners to exercise their rights. No annual meeting of shareholders has been organized since the beginning of 2015, in clear contravention of the rights of shareholders and the company organizational documents and the current majority at the Board represents only barely 18% of the shareholding since the decisions of Vice Chancellor Laster!

14.    In a very clear denial of shareholders rights this minority that has hijacked the company, as proven by the Plaintiffs that could easily demonstrate they had the majority in May 2016, the illegal executive committee has now decided without authorization of the Board to sell the company despite its catastrophic situation and taking advantage of their redemption preference on the proceeds of the sale to fundamentally wipe out the common shareholders. This is in complete contravention against moral standards, the law, and the governance principles. The Board members are entitled to be able to assess the situation of the company and have information on the real situation of the company to discharge themselves of their fiduciary duties.

15.    The company has produced for 17 years its audited statements the first

9

week of March. We are today June 11 and we got tye final audited accounts only 4 days ago and they are heavily manipulated! If that does not justify our demand what would? Further a number of heavy manipulations that would be punishable under the SEC and FASB reporting rules have been outlined to us by a top five accounting firm last year for 2016, on the accounting practices of the Company, and the currently going heavy manipulations of the numbers, most likely explain the impossibility of closing the books in 2018 for 2017 on time (A 3 months delay).

16.    We have already proven, and communicated the evidence to the Board, that the two rogue Board members have abused corporate assets for their benefit and plundered the company in multiple ways. This is, among other, the object of a lawsuit in Switzerland where the facts happened for a part, but we are unable to get evidence on some other known cases because of the refusal by the Company to provide the books and records inspection in other part of the business. Despite the difficult effort by the Plaintiffs to get evidence, the company has refused to even investigate the proven facts and is refusing to give us the information we need to exercise our control in line with our fiduciary duties in other areas of the company. In two years we have been refused all the T&E we have requested, all the details of the transactions that allowed the corrupt rogue Board members to allocate the company wealth to themselves and other people illegally. This is the object of our demand. Without this information the stealing

can continue uninterrupted as there is no governance left in the company.

17.     This information demand is highly critical as the illegal Board is shopping around the company without any authorization of the Board and has created a "deck" or presentation illegally, without informing the Plaintiffs and largest shareholders, and the company financial situation is now dramatic. The minority in charge currently, TCV, has a redemption preference on the proceeds and can therefore in an uncontrolled way take easily advantage of the common shareholders by selling at a low price but still getting repaid fully. After losing the redemption battle front of the Delaware court years ago, they had no other ways but to create all these issues with the company by using methods from another age. They only needed a bad decision of Vice Chancellor Laster, rejecting the rights of the majority shareholders in a laughable Status Quo decision, and got it.

18.     This information is necessary to control the management and highlight their various thefts and corporate abuses, highlight a very bad business situation and clarify a lot of the illegal practices that have taken place with the new management.

19.     In two years the company has refused ALL information requested by the shareholders not aligned with TCV for no reason and has tried to justify the unjustifiable through their corrupt lawyers, Morgan Lewis, who were heavily conflicted as former lawyers for years of the Plaintiffs who engineered for money a fake case against Philippe Buhannic, with one bad reason after another. Given this

record the Court should put a hefty penalty on not providing this essential element of corporate governance through a heavy financial penalty in case of non-production of the documents.

20. With respect to this Request, it is important to note that TCV exercised this right systematically in the past, just to create trouble for the company at the time, and the company always complied with their demand, a stark contrast with today's situation where for two years the company has refused even the simplest documents to produce like T&E. Clearly there is a lot to hide.

21. A new Board will take place on June 28th and we need to be informed , in a very dangerous situation for the company, as the management has wrecked totally the company, to be informed to be able to discharge ourselves from our fiduciary duties and even more to control a management that has been caught multiple times stealing assets of the company. Not to allow us to exercise our information rights is synonymous with allowing theft to happen.

RLF1 10795499v.1

22. The Company's position is inconsistent with Delaware law and fails to comply with Section 220(d).

23. Despite Plaintiffs' status as directors, the Company has continued to deny Plaintiffs access to the books and records that he requested. By failing to grant Plaintiffs, as directors of the Company, their statutory right to inspect the Company's books and records, the Company failed to comply with its obligations under Section 220 with respect to the Demand.

**COUNT I**
**(Inspection of Books and Records Under 8 *Del. C.* § 220(d))**

24. Plaintiffs repeat and reallege paragraphs 1 through 22 of the Verified Complaint as if fully set forth herein.

25. Plaintiffs have complied with the requirements of Section 220(d) with respect to the form and manner of making a demand for examination of the books and records of TradingScreen.

26. Plaintiff's purposes for requesting the books and records of TradingScreen are proper purposes, reasonably related to Plaintiff's position as directors of TradingScreen.

27. TradingScreen has failed to provide Plaintiffs with the books and records requested in the Demand, including but not limited to all documents, materials and other information reflected in the list given in annex

RLF1 10795499v.1

Board of Directors, or any committee thereof during the period from June 2016 to present.

28.     The Company has also wrongfully withheld accounting, compensation, shareholding, business, transactions and other key information

29.     Plaintiffs are entitled to receive copies and/or inspect with his counsel and make copies of the books and records requested in the Demand.

30.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)     enter judgment in favor of Plaintiffs and against TradingScreen;

(b)     summarily order TradingScreen to provide to Plaintiffs all of the books and records sought in the Demand;

(c)     award Plaintiffs his costs and expenses incurred in bringing and prosecuting this action, including his attorneys' fees since the beginning of the actions in 2016; and

(d)     Establish a heavy financial penalty for the non-delivery of the information the Board members are entitled to.

(e)     award such other and further relief as may be just and equitable in the circumstances.

RLF1 10795499v.1

/s/Philippe Buhannic

65 Central Park West, 17 A
New York
NY 10023
(917) 716-3542

*Pro Se for Philippe Buhannic and Patrick Buhannic*

Dated: June 11, 2018

UNITED STATES DISTRICT COURT
NEW YORK SOUTHERN DISTRICT
-------------------------------------------------------------x
PHILIPPE BUHANNIC, PATRICK BUHANNIC,
~~AND TRADINGSCREEN SHAREHOLDERS ASSOCIATION~~,

                              Petitioners,


          -against-                                Index No:

                                                   Judge:

TRADINGSCREEN INC.; PIERRE SCHROEDER;
PIERO GRANDI; FRANK PLACENTI; ROBERT
TRUDEAU; TCV VI, L.P., AND TCV MEMBER
FUND, L.P.

                              Respondents,
-------------------------------------------------------------x

## NOTICE OF OTSC
## MOTION

**PLEASE TAKE NOTICE** that, upon the annexed affirmation of Philippe

Buhannic dated June 11, 2018, the exhibits attached thereto, the accompanying

memorandum of law, and any other papers, pleadings and proceedings in this

action, Plaintiffs will move this Court at the Courthouse located at 500 Pearl Street,

New York, New York 10007, on June 29, 2018 at 9:30am, or as soon thereafter as

Plaintiffs (pro se) can be heard, to issue an order, pursuant to Federal Rules of

Civil Procedure (FRCP), granting the following reliefs to the movant:

1. By entering an Order to force the Company to provide the books and record information requested by the Petitioners;

2. Establish a heavy financial penalty for the non-delivery of the information the Board members are entitled to.

3. Award Plaintiffs his costs and expenses incurred in bringing and prosecuting the various books and records actions, including his attorneys' fees since the beginning of the actions in 2016;

**PLEASE TAKE FURTHER NOTICE,** that pursuant to , you a Federal Rules of Civil Procedure (FRCP) you are hereby required to serve copies of your answering affidavits on the undersigned no later than the seventh day prior to the date set above for submission of this motion.

Dated: New York, New York
      May 11, 2018       By:

            Philippe Buhannic
            Aventura 318
            Route des Creux 100
            1936 Verbier
            Switzerland
            917-716-3542

2

TO:

Peter C. Neger, Esq.
Laurie E. Foster, Esq.
*MORGAN, LEWIS, & BOCKIUS LLP*
101 PARK AVENUE
NEW YORK, NEW YORK 10178


Stephen A. Radin, Esq.
Evert J. Christensen, Jr., Esq.
*WEIL GOTSHAL, & MANGES LLP*
767 Fifth Avenue
New York, New York 10153

**Via Email and Federal Express**
Kevin Held
TradingScreen, Inc.
215 Park Ave. S, #1300
New York, NY 10003

          Re:    Demand for Inspection Of Books and Records of TradingScreen,
                   Inc. Pursuant to 8 Del.C. § 220.

Dear Kevin,

As you are aware, we, Philippe Buhannic ("Philippe") and Patrick Buhannic ("Patrick"), are directors of TradingScreen, Inc. (the "Company"). Although we have made similar demands to you in the past multiple times in the past 12 months with no effect, we now formally demand the right to inspect the following complementary books and records of the Company and to make copies or extracts therefrom pursuant to Section 220(d) of the Delaware General Corporation Law in addition to our earlier request.

As there is a Board meeting on February 26th and given the amount of lacking information as we have received nothing for more than 18 months now, we are requesting to get this information by February 15th to give us the time to analyze it. This information is readily available, standard and does not require any special work and was made available in the past to the Boards members.

Demands for Inspection:

1. All accounts closed at the end of December 2017 as they are available, we know that.

2. Accounts of the BideFx subsidiary at end of December 2017.

3. Accounts for Quo systems at end of December 2017.

4. The cap tables of both BideFX and QUO systems

5. Calculation of Run rate revenues and costs calculating these based on the current levels of business and costs, on a full year basis, at the end of December 2017 and end of March 2018 and incorporating the non-renewed contracts and committed costs impact.

6. Total T&E account and T&E for the top 5 people in the company including CEO and Chairman in detail with justification of the expenses since May 2016.

7. List of clients lost since June 2016, 2017, and list of clients acquired since June 2016.

8. Details of debt/leases undertaken since January 2016 or any other commitments taken by the company including for equipment and furniture.

9. Number of Screens active at the end of June 2016, December 2017 and March 2018: (Screens are active if they have traded in the last month).

10. Total amount of legal costs since June 2016 by firm and by subject including the amounts paid to hackers to attack Philippe and Patrick Buhannic.

11. All written or electronic documents, communications or other records relating to analyses of the asset carve-out for the foreign exchange and wealth management subsidiaries and the resources, number of people, and total cost committed to it, including any analysis on creating a foreign exchange BideFX, and/or wealth management subsidiary QUO systems, cost-benefit analyses, revenue targets, budgets and projected returns on investment.

12. The incentive plans of Bide and Quo systems with the list of the beneficiaries of allocations detailed per individual with the authorization of the Board for these allocations

13. All written or electronic documents, communications or other records relating to the impact of the depreciation costs of the restricted stock plan on the Company's profits and losses and the calculation backing up this depreciation.

14. All written or electronic documents, communications or other records relating to cost-benefit analyses concerning continuing or closing the Brazilian operations, the Chicago office and the Boston and Chicago office including but not limited to the costs due to the closure of these offices over the next two years and any associated legal costs.

15. All written or electronic documents, communications or other records relating to analyses of the costs of the New York office as it is today versus the new office over the next five years and its impact on the costs run rate annualized.

16. All written or electronic documents, communications or other records relating to analyses concerning the business rationale of creating an office in Frankfurt and any business plans or forecasts of revenues or costs of the Frankfurt office for the next three years on an annualized run rate basis for costs and revenues.

17. All written or electronic documents, communications or other records relating to brokers that have moved from a prepayment schedule to on top with no commitment, including but not limited to the price of renewal and a comparison between the historic price and the current price of renewals in

2016, as well as the percentage of overall prepaid deals as of now compared to the end of 2015 and 2016.

18. All written or electronic documents, communications or other records to any contracts renegotiated in the last six months with current clients and the net financial impact on the Company of these renegotiated contracts on a run rate annualized basis.

19. All written or electronic documents, communications or other records relating to aged customer balances and a list of clients who have not paid their bills for more than a month with the outstanding amounts at end of 2017 and end of March 2018.

20. All written or electronic documents, communications or other records relating to the cost to the Company of the new sales hires since the beginning of 2016 in annualized run rate, and information regarding their total compensation (including equity compensation, if any) and a clear production attached to their name.

21. All written or electronic documents, communications or other records relating to analyses since May 2016 of all consulting/audit/accounting costs incurred by the company by purpose and by provider.

22. All written or electronic documents, communications or other records relating to all payments to Board members and their travel and entertainment expenses ("T&E") and the detail of these with copy of the original receipts and a copy of the company T&E policy changes since May 2016.

23. All written or electronic documents, communications or other records relating to all severance payments that have been made since May 2016 and a copy of all separation agreements.

24. All written or electronic documents, communications or other records relating to any contracts between the Company and the following individuals: Pierre Schroeder, Piero Grandi, Bruce Rosenthal and John Gross.

25. All written or electronic documents, communications or other records relating to the Company's recent valuation of the its stock at 14 cents, including but not limited to, any valuation materials provided to the Company by the recent valuation consultant, the contract with that consultant, and all communications with the consultant concerning the company's input given to the consultant to perform the valuation.

26. All written or electronic documents, communications or other records sufficient to show all the Board's committees and their composition at the end of December 2017.

27. All written or electronic documents, communications or other records relating to the costs of services used by the Company between October 2015 and present day in connection with obtaining information, legal advice, detective services, consulting or other expenses on Philippe and Patrick, including but not limited to any such services provided by Bruce Rosenthal and John Gross or any other person dedicated to this task.

28. All written or electronic documents, communications or other records relating to the board, and the recordings of all board meetings since May 10th, 2016, as well as all board minutes that refer to these board meetings. All the minutes of the various committees: executive committee, compensation committee and other if existing.

29. A copy of all yearly conflict of interest declarations of all board members signed and executed for the last three years, as well as an update from each board member on the new potential existing conflicts of interest, and a new executed form to declare these conflicts of interests as required by the company policy and in the format accepted by the company.

30. A copy of the contract between all board members and the company, or between the board members and any entities that could create a conflict of interest, and in particular the representation contract of Frank Placenti with TCV and any contract, understanding, deal or otherwise existing between TCV and any board members since 2007.

31. All written or electronic documents, communications or other records (salesforce, revenues run per person, etc.) reflecting the production of revenues by sales people in USD for all the sales employees that received a bonus or a stock allocation for the 2016 and 2017 year.

32. All written or electronic documents, communications or other records that would have been sent to board members by the company lawyers and advisors or consultants: Bruce Rosenthal, Morgan Lewis, Kenneth Nachbar, Dennis Block or any other without copying Philippe Buhannic and Patrick Buhannic since January 2016 in breach of the equal information right of all board members.

33. All written or electronic documents, communications or other records relating to any settlements or potential settlements in connection with the Delaware Series D redemption litigation (the "Delaware Redemption Litigation") since 2015. The copy of the final agreement signed or ready to be signed between TCV, Pierre Schroeder, Piero Grandi and potentially the company, mentioned multiple times in communications and that we are, as board members entitled to see it relates to the future of the company to discharge ourselves of our fiduciary duties

34. All written or electronic documents, communications or other records that
are linked to the "Deck" assembled by the executive committee to sell the
company without authorization from the Board and a list of all interested
parties as well as their bids and requests.

<u>Purpose:</u>

As you are aware, we have been concerned about the quality of corporate
governance and the process by which information relevant to board meetings and
decisions is distributed. It is our view that the board has failed to timely distribute
material information to the directors of the Company and, in some cases, has failed to
provide material information at all. This happens while very significant decisions are
being taken, having a critical impact on the future of the company. The board members
have not been supplied the analysis necessary for them to support or combat these
decisions despite consistent and multiple requests. A clear pattern of deception and
information control and rationing has developed in a company where all information
demands were answered willingly historically.

Given the rapidly deteriorating situation at the Company, particularly the loss of
clients, failure to acquire new business, and the costly strategy of employing additional
employees without a clear plan, the profitability of the company and its survival is now at
stake. As such, we seek all these documents to be able to act as responsible board
members and discharge ourselves of our fiduciary duties.

Our purpose for each of these requests is to allow for a more fulsome and
informed discussion about the current and future business of the Company at the next
board meetings. To accomplish that goal, the above-listed information is tailored to the
necessary and essential information needed to properly understand the Company's
current financial and operational situation, and to discharge the fiduciary duties directors
owe to the Company and its shareholders. This demand follows many other demands and
the management teaming up with TCV has refused so far systematically to send any
relevant information putting the entire governance of the company in jeopardy and
allowing the Management to steal assets form the company and misappropriate company
funds to an extent that is criminal and that we will pursue strongly. Dissimulation of
evidence in a criminal action is a very serious action and the company and the board
members practicing it should be aware of their risks and liabilities.

We anticipate a response within five business days from receipt of this demand
and reserve all rights.

This demand is made under oath, and we affirm the foregoing statements to be
true and correct to the fullest extent of my knowledge and belief under penalty of perjury
under the laws of the State of Delaware.

Sincerely,

Philippe Buhannic

Patrick Buhannic



June 1, 2018

**BY EMAIL**

Mr. Philippe Buhannic
65 Central Park West (17-A)
New York, NY  10023
pbuhannic@gmail.com

Mr. Patrick Buhannic
9 rue de la Resistance
92800 Puteaux, FRANCE
pabuhannic@compuserve.com

     Re:    Demand for Inspection of Books and Records of TradingScreen, Inc. Pursuant to
8 Del. C. § 220, delivered May 30, 2018

Dear Philippe and Patrick:

       I write in response to your May 23, 2018 letter to Kevin Held that was delivered to him
by Federal Express on May 30 (the "May 2018 Demand"). Although the letter indicates that it
was sent by email in addition to Federal Express, Kevin tells me that he did not receive it by
email. Also, although the May 2018 Demand purports to be made on behalf of both of you, we
note that it was not signed by Patrick. Moreover, although the May 2018 Demand states that it is
made under oath, there is no indication that it was in fact signed before an officer authorized to
attest to sworn statements.

       Your May 2018 Demand is the most recent link in a long chain of demands that
TradingScreen Inc. (the "Company") provide you with the right to inspect and make copies of
Company records pursuant to Section 220(d) of the Delaware General Corporation Law. In fact,
your May 2018 Demand is virtually identical to the demand you made just a few months ago in
February 2018. It even continues to make reference to your need to have the information "by
February 15th" so that you can be prepared for the "Board meeting on February 26th."

       Therefore, for the same reasons set forth in our February 14, 2018 letter in response to
your February 2018 demand (a copy of which is enclosed), the Company again declines your
May 2018 Demand.

Sincerely,

Pierre Schroeder
Chief Executive Officer

cc:    Mr. Kevin Held



February 14, 2018

BY EMAIL AND OVERNIGHT MAIL

Mr. Philippe Buhannic
65 Central Park West (17-A)
New York, NY 10023
pbuhannic@gmail.com

Mr. Patrick Buhannic
9 rue de la Resistance
92800 Puteaux, FRANCE
pabuhannic@compuserve.com

Re:  Demand for Inspection of Books and Records of TradingScreen, Inc. Pursuant to 8
Del. C. § 220, delivered February 7, 2018

Dear Philippe and Patrick:

I write in response to your undated letter to Kevin Held that was delivered by email on
February 7, 2018 (the "February 2018 Demand"). In that communication, you demand that Trad-
ingScreen Inc. (the "Company") provide to you, in your capacities as directors of the Company,
by February 15, 2018, the right to inspect and make copies of no less than thirty-three separate
categories of books and records of the Company pursuant to Section 220(d) of the Delaware Gen-
eral Corporation Law ("Section 220").[1]

As you acknowledge in your letter, the February 2018 Demand is just the latest in a series
of requests you have filed in the past year or so to inspect the Company's books and records. The
Company again respectfully declines your demand.

---

[1]    We dispute your claims, set forth in the February 2018 Demand, that the information requested "is readily
available, standard and does not require any special work," and that it "was made available in the past to Board[]
members." On the contrary, while this information may have been available to Philippe when he served as CEO of
the Company, he is no longer an officer of the Company and the vast majority of this information has never been
provided to non-management members of the Board such as yourselves. Moreover, many of the categories requested
would require Kevin and others to devote substantial attention to collecting and compiling data, and would require an
expensive and time-consuming forensic analysis of thousands (if not tens of thousands) of email communications
residing on the Company's servers.

Needless to say, we also dispute your baseless assertion that the Company's situation is "rapidly deteriorat-
ing" and that its "survival is now at stake." In fact, the Company is now in a stronger position than it was at the time
that you were removed from your position as CEO, and would be in an even stronger position still had it not been for
the very substantial legal expenses incurred by the Company as a result of your vexatious and meritless litigation, your
persistent defamation of the Company to its customers, employees and vendors, and the disruption to the Company's
operations caused by your malicious and self-indulgent conduct.

DB1/ 95734517.1DRAFT 02/12/18  10:29AM

*First*, in July 2016 you commenced an action in the New York State Supreme Court, New York County, entitled *Buhannic v. TradingScreen, Inc., et al.*, Index No. 653624/2016 (the "NY Action") in which you seek various forms of relief, including derivative relief against the Company. Delaware law does not permit an action for access to books and records under Section 220 to be maintained simultaneously with a plenary derivative action brought by the same plaintiffs against the company. *Central Laborers Pension Fund v. News* Corporation, 2011 WL 6224538, at *2 (Del. Ch., Nov. 30, 2011). To the extent that you continue to pursue derivative claims against the Company in the NY Action, the Company is not obligated to provide you with access to books and records demanded pursuant to Section 220.

*Second*, as you are aware, under Delaware law, a director is only entitled to inspection "for a proper purpose." *King v. DAG SPE Managing Member, Inc.*, No. CIV.A. 7770-VCP, 2013 WL 6870348, at *5 (Del. Ch. Dec. 23, 2013). Directors must act in good faith and are not entitled to inspection if their motives are "inconsistent with [their] fiduciary obligations and with the interests of [the company] and its stockholders." *Bizzari v. Suburban Waste Services, Inc.*, C.A. No. 10709, 2016 WL 4540292, at *8 (Del. Ch. 2016). As you are also aware, serious and substantiated allegations have been made regarding Philippe's active involvement with the NexSmart entities that are in direct competition with the Company. The Company does not believe that it would be prudent to share the Company's most sensitive proprietary and competitive information with someone who appears to be in direct competition with the Company and who has declined on multiple occasions to complete, execute and deliver to the Company its standard form of Conflict of Interest Disclosure and an appropriate confidentiality agreement. Should Philippe fully complete, execute and deliver to the Company this form of Conflict of Interest Disclosure and an appropriate confidentiality agreement, the Company would be prepared to discuss providing you with access to a mutually-agreeable selection of documents reasonably related to your performance of your duties as directors of the Company.

*Finally*, I remind you that in April 2017 you commenced an action against the Company in which you sought a mandatory preliminary injunction requiring the production of documents under Section 220. *Buhannic v. TradingScreen Inc.*, Index No. 652034/2017 (the "April 2017 Section 220 Action"). That relief was denied by the Court following a hearing on May 11, 2017. After the Company moved to dismiss that lawsuit and demonstrated that it was totally lacking in merit, the parties participated in a teleconference with the Court. As a result of that conference with the Court, you voluntarily dismissed the April 2017 Section 220 Action altogether. In September 2017, you commenced a second lawsuit against the Company under Section 220. *Buhannic v. TradingScreen Inc.*, Index No. 655848/2017 (the "September 2017 Section 220 Action"). In the more than three months since the Company responded to your complaint in that case, you have done absolutely nothing further to pursue your claims in that case. Both of the Section 220 actions filed by you resulted in a substantial, pointless and needless expense for the Company. Please be advised that the commencement of any new vexatious litigation against the Company will be in derogation of your fiduciary duties to the Company and its stockholders, and the Company reserves its right to seek appropriate relief against you in the form of sanctions or otherwise.

2

As we have advised you on multiple occasions, the Company will continue to provide you both with all documents and information shared with the other non-management directors of the Company, at the same time and in the same form as provided to all such directors.

Sincerely,

Pierre Schroeder
Chief Executive Officer

cc:    Mr. Kevin Held



February 14, 2018

**BY EMAIL AND OVERNIGHT MAIL**

Mr. Philippe Buhannic
65 Central Park West (17-A)
New York, NY 10023
pbuhannic@gmail.com

Mr. Patrick Buhannic
9 rue de la Resistance
92800 Puteaux, FRANCE
pabuhannic@compuserve.com

Re:   Demand for Inspection of Books and Records of TradingScreen, Inc. Pursuant to 8
Del. C. § 220, delivered February 7, 2018

Dear Philippe and Patrick:

I write in response to your undated letter to Kevin Held that was delivered by email on February 7, 2018 (the "February 2018 Demand"). In that communication, you demand that TradingScreen Inc. (the "Company") provide to you, in your capacities as directors of the Company, by February 15, 2018, the right to inspect and make copies of no less than thirty-three separate categories of books and records of the Company pursuant to Section 220(d) of the Delaware General Corporation Law ("Section 220").[1]

As you acknowledge in your letter, the February 2018 Demand is just the latest in a series of requests you have filed in the past year or so to inspect the Company's books and records. The Company again respectfully declines your demand.

---

[1]      We dispute your claims, set forth in the February 2018 Demand, that the information requested "is readily available, standard and does not require any special work," and that it "was made available in the past to Board[] members." On the contrary, while this information may have been available to Philippe when he served as CEO of the Company, he is no longer an officer of the Company and the vast majority of this information has never been provided to non-management members of the Board such as yourselves. Moreover, many of the categories requested would require Kevin and others to devote substantial attention to collecting and compiling data, and would require an expensive and time-consuming forensic analysis of thousands (if not tens of thousands) of email communications residing on the Company's servers.

Needless to say, we also dispute your baseless assertion that the Company's situation is "rapidly deteriorating" and that its "survival is now at stake." In fact, the Company is now in a stronger position than it was at the time that you were removed from your position as CEO, and would be in an even stronger position still had it not been for the very substantial legal expenses incurred by the Company as a result of your vexatious and meritless litigation, your persistent defamation of the Company to its customers, employees and vendors, and the disruption to the Company's operations caused by your malicious and self-indulgent conduct.

*First*, in July 2016 you commenced an action in the New York State Supreme Court, New York County, entitled *Buhannic v. TradingScreen, Inc., et al.*, Index No. 653624/2016 (the "NY Action") in which you seek various forms of relief, including derivative relief against the Company. Delaware law does not permit an action for access to books and records under Section 220 to be maintained simultaneously with a plenary derivative action brought by the same plaintiffs against the company. *Central Laborers Pension Fund v. News* Corporation, 2011 WL 6224538, at *2 (Del. Ch., Nov. 30, 2011). To the extent that you continue to pursue derivative claims against the Company in the NY Action, the Company is not obligated to provide you with access to books and records demanded pursuant to Section 220.

*Second*, as you are aware, under Delaware law, a director is only entitled to inspection "for a proper purpose." *King v. DAG SPE Managing Member, Inc.*, No. CIV.A. 7770-VCP, 2013 WL 6870348, at *5 (Del. Ch. Dec. 23, 2013). Directors must act in good faith and are not entitled to inspection if their motives are "inconsistent with [their] fiduciary obligations and with the interests of [the company] and its stockholders." *Bizzari v. Suburban Waste Services, Inc.*, C.A. No. 10709, 2016 WL 4540292, at *8 (Del. Ch. 2016). As you are also aware, serious and substantiated allegations have been made regarding Philippe's active involvement with the NexSmart entities that are in direct competition with the Company. The Company does not believe that it would be prudent to share the Company's most sensitive proprietary and competitive information with someone who appears to be in direct competition with the Company and who has declined on multiple occasions to complete, execute and deliver to the Company its standard form of Conflict of Interest Disclosure and an appropriate confidentiality agreement. Should Philippe fully complete, execute and deliver to the Company this form of Conflict of Interest Disclosure and an appropriate confidentiality agreement, the Company would be prepared to discuss providing you with access to a mutually-agreeable selection of documents reasonably related to your performance of your duties as directors of the Company.

*Finally*, I remind you that in April 2017 you commenced an action against the Company in which you sought a mandatory preliminary injunction requiring the production of documents under Section 220. *Buhannic v. TradingScreen Inc.*, Index No. 652034/2017 (the "April 2017 Section 220 Action"). That relief was denied by the Court following a hearing on May 11, 2017. After the Company moved to dismiss that lawsuit and demonstrated that it was totally lacking in merit, the parties participated in a teleconference with the Court. As a result of that conference with the Court, you voluntarily dismissed the April 2017 Section 220 Action altogether. In September 2017, you commenced a second lawsuit against the Company under Section 220. *Buhannic v. TradingScreen Inc.*, Index No. 655848/2017 (the "September 2017 Section 220 Action"). In the more than three months since the Company responded to your complaint in that case, you have done absolutely nothing further to pursue your claims in that case. Both of the Section 220 actions filed by you resulted in a substantial, pointless and needless expense for the Company. Please be advised that the commencement of any new vexatious litigation against the Company will be in derogation of your fiduciary duties to the Company and its stockholders, and the Company reserves its right to seek appropriate relief against you in the form of sanctions or otherwise.

2

As we have advised you on multiple occasions, the Company will continue to provide you both with all documents and information shared with the other non-management directors of the Company, at the same time and in the same form as provided to all such directors.

Sincerely,

Pierre Schroeder
Chief Executive Officer

cc:    Mr. Kevin Held